# EXHIBIT B

1

1      IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT

2                    KANE COUNTY, ILLINOIS

3

4    EMILY NOE, et al.,                    )
               Plaintiff,                  )
5        vs.                               )
     MICHAEL L. PARSON, et al.,            )  No. 2024 MR 3
6          Defendants,                     )       2024 MR 415
         vs.                               )
7    WORLD PROFESSIONAL ASSOCIATION        )
     FOR TRANSGENDER HEALTH,               )
8          Third-Party Subpoena            )
           Recipient.                      )

9

10            REPORT OF PROCEEDINGS of the electronic

11   recording of the hearing of the above-entitled

12   cause before the Honorable JUDGE JOSEPH M. GRADY,

13   at the Kane County Courthouse, Room 110, on the

14   24th day of September, 2024.

15

16

17                 **Motion to Quash Subpoena**

18

19

20

21              RECORDING TRANSCRIBED BY:

22

23                  Jennifer Campbell

24                Official Court Reporter

2

1

2      APPEARANCES:

3

4

            CROWELL & MORING LLP, by
5
            ATTORNEY DERICK DAILEY
6           ATTORNEY JUSTIN KINGSOLVER
            Two Manhattan West
7           375 Ninth Avenue
            New York, New York  10001
8           (212) 803-4016
                 on behalf of WPATH,
9
            DREW LAW GROUP, by
10
            ATTORNEY BRYAN A. DREW
11
            806 Public Square
12          Benton, Illinois  62812
            (618) 219-8833
13               on behalf of the State of Missouri.

14

15                      *     *     *

16

17

18

19

20

21

22

23

24

3

1      THE COURT:  This is case 2024 MR 3.

2           Hi.

3      ATTORNEY DAILEY:  Good morning.

4      ATTORNEY DREW:  Good Morning, Your Honor.

5      THE COURT:  Hi.

6           Whose motion is it?

7      ATTORNEY DAILEY:  It's our motion.

8      THE COURT:  Okay.

9      ATTORNEY DAILEY:  Derick Dailey on behalf

10  of WPATH, joined with co-counsel, Justin Kingsolver.

11      THE COURT:  Okay.

12      ATTORNEY DAILEY:  As you know, Your Honor,

13  we submitted briefing in this matter.  And what's in

14  front of you is a motion to quash the foreign

15  subpoena.  It's an out-of-state subpoena from the

16  State of Missouri.

17           And we've argued in the motion that the

18  subpoena should be quashed for three main reasons.

19           The first is that it doesn't comply

20  with Rule 17 of the Illinois State Supreme Court

21  Rules.

22      THE COURT:  Okay.

23      ATTORNEY DAILEY:  And that's a rule that

24  requires that if you are seeking documents related

4

1    to lawful health care activity, that one of two

2    exemptions apply.

3              The State concedes in its subpoena that

4    they are seeking documents for lawful health care

5    activity, but they don't identify any of the

6    exemptions.

7              THE COURT:  Okay.

8              ATTORNEY DAILEY:  For that reason alone, we

9    think that the motion should be granted.

10             THE COURT:  Okay.

11             ATTORNEY DAILEY:  In addition to Rule 17,

12   Illinois has a Shield Law, it was enacted last year,

13   2023, which essentially prohibits out-of-state

14   enforcers to seek lawful health care activity

15   documents and information from Illinois providers'

16   gender-affirming care.

17             That law, which was passed last year,

18   makes it very clear that outside enforcers like

19   Missouri Attorney General's Office cannot come in to

20   Illinois and collect that information from

21   providers.

22             Our client is a provider of

23   gender-affirming care.  They work with medical

24   professionals across the country to set standards

5

1    for gender-affirming care.

2              And pursuant to the plain language of

3    the Shield Law, this subpoena would clearly fall

4    within the Shield Law and be prohibited.

5              We also lay out a number of

6    constitutional arguments in our motion.

7              Most importantly, the First Amendment.

8    We argue that the documents that State requests,

9    which are 47 broad categories of documents

10   requesting sensitive information, confidential

11   information about our client, what our client does,

12   voting records of members, of personnel matters, we

13   argue that seeking those records and disclosure of

14   those records would infringe on our client's First

15   Amendment Speech and Association Rights, which

16   essentially, is activity for our client.

17             We lay out a number of case law, cases,

18   rules, many of which the State does not respond to

19   in its motion.  And we make the point in our reply

20   that they've essentially waived and conceded those

21   arguments.

22             Last thing I'll say, Your Honor, is

23   that we also make arguments with respect to

24   relevance and breadth, which, again, went

6

1   unresponded in the motion.

2           For those reasons, we'd ask that the

3   motion be quashed.

4        THE COURT:  Okay.  Thank you.

5        Where was it issued -- from Missouri?

6        ATTORNEY DAILEY:  Yes.  From Missouri and

7   issued here in Illinois.

8        THE COURT:  Okay.  Thanks.

9        ATTORNEY DREW:  Bryan Drew on behalf of

10   Parson, Your Honor, in this instance, the State of

11   Missouri.

12        Judge, as it relates to this, I'll kind

13   of go in reverse order of what I planned.

14        But as it relates to the issue of

15   breadth and scope, these very documents have been

16   disclosed in five different states in different

17   litigations in other places.  And so, from WPATH'

18   standpoint, clearly, it's not overburdensome to

19   them.  And we cite that in our brief.  He prefers

20   that we waive that, but, actually, in our reply to

21   their motion to quash, we specifically set forth

22   that out.

23        In fact, we even cite the states upon

24   which WPATH have disclosed these very documents.

7

1              In addition to that, we note in our

2     reply that we are willing to allow for redaction,

3     which I think any First Amendment claim that they

4     have, redaction has always been a way for the case

5     law to say that that will suffice in that instance.

6     So that relates to those.  I don't think those are

7     really germane to the issue.

8              What it really gets down to is whether

9     or not our request actually even falls under the

10    Shield Law under the circumstances.

11             Because if we look at the actual Shield

12    Law the State of Illinois enacted, basically, the

13    federal rule of outgoing subpoenas, in which they

14    went back last year and stuck in a special section,

15    special legislation under the circumstances of

16    un-enforceable foreign subpoenas, and in that they

17    refer to Lawful Health Care Activity Act and that

18    Reproductive Health Act and is cited there, and I've

19    cited it in our reply.

20             But, in this instance, we are not

21    seeking medical records from an individual who

22    sought health care or sought gender-affirming

23    treatment here in Illinois.

24             WPATH sets out standards that they have

1   promulgated throughout the United States and said

2   this is the standard upon which you are to treat

3   transgender issues, this is the way we should do it.

4           And the underlying lawsuit, which

5   I think is very relevant, in Missouri is actually

6   Noe and several other plaintiffs who have sued the

7   State of Missouri concerning a statute there in

8   Missouri.  And they have brought the issue forward,

9   and they cite WPATH's standards as their grounds for

10  overturning the statute that exists in the state of

11  Missouri, which I actually set forth in full the

12  entire statute, the Missouri statute is set forth in

13  my reply, which I won't do here.  I'll leave that to

14  the Court to look at another time.

15          But in that, they brought the issue up.

16  And, specifically, in the underlying Unenforceable

17  Foreign Subpoenas Act in Illinois under the Code of

18  Civil Procedure it clearly sets out that one of the

19  exceptions is actually if someone is seeking on

20  statutory grounds constitutionality as it relates to

21  an issue.  And in this instance, Noe, and in the

22  other ones, I'd also note not a single person here

23  is a resident of Illinois.  So they're all --

24          THE COURT:  You mean among the parties?

9

1    ATTORNEY DREW:  Among the parties.

2         They're all from foreign states.

3         So Illinois is seeking to protect --

4    conceivably, under this rule, to protect Illinois

5    residents from outside entities, particularly,

6    states, from coming in and seeking information

7    against Illinois residents or people who come over

8    to seek that treatment.  No one here has gone and

9    done that.  So I don't think it falls within that.

10        But, in addition to that -- so I think

11   it should be denied for those reasons.

12        But, in addition, and as it relates to

13   this, I think the --

14   THE COURT:  You mean the motion should be

15   denied?

16   ATTORNEY DREW:  Yes.

17   THE COURT:  Okay.

18   ATTORNEY DREW:  The motion to quash should

19   be denied.  I apologize.

20   THE COURT:  Okay.

21   ATTORNEY DREW:  And -- but as it relates to

22   that, I think, also, what needs to be dealt with,

23   also, is the underlying act itself.  Because it is

24   set out simply for one single, solitary purpose, and

10

1    that unusual purpose is to deal with one specific

2    area of medicine.

3              And in this instance, what's happened

4    is the State of Illinois has done something that

5    I don't think states are allowed to do, and that is

6    to say, well, here's a topic and issue that is of

7    public concern, transgender treatment,

8    gender-dysphoria, surgical intervention, all sorts

9    of intervention that has long-term, far-reaching

10   effects to children, and that is particularly the

11   issue of the Missouri law.

12             And in this instance, the State of

13   Illinois has said we come down on the side of this

14   should happen and we -- we believe in that,

15   therefore, we're going to enact a statute that

16   doesn't allow you to get at the information.

17             And when you look at this, Illinois has

18   now enacted laws that go far outside the state of

19   Illinois and now says we're going to dictate to the

20   rest of the United States, to all other states, that

21   you will abide by what we believe is right and what

22   we believe is right is that gender-affirming care to

23   children should happen and you're not entitled to

24   get any information to find out about it.

1      So I think, under the instance of this,

2   the Illinois law has a lot of problems, the first

3   and foremost of which is dealing with the Full Faith

4   and Credit Clause of the United States Constitution

5   because they're now dictating to other states what's

6   going to happen and what you can and can't do.  And

7   it's specifically done for the purpose that I think

8   is even more burdensome, and that is because of the

9   thought process which rolls us into the First

10  Amendment.  I agree with counsel that the First

11  Amendment is an issue here, but it actually cuts our

12  way.  Because, in this instance, WPATH and the State

13  of Illinois has said, well, you're not entitled to

14  this information.  And one of the foundational

15  principles of this entire country is the free flow

16  of information, particularly on issues that are

17  germane to public opinion, public policy, political

18  discussion.  And, in this instance, we're dealing

19  with statutes, medical treatment, but it is

20  absolutely a generalized discussion in the United

21  States and currently a topic of issue among everyone

22  about whether or not this is appropriate as it

23  relates to children.

24          And, in this instance, WPATH has set

1   out guidelines.  They say, look, we've done

2   scientific studies.  Here's our studies, we've laid

3   them out, and this is how you should do it.  It's a

4   good thing.

5           But the problem is is they say, but you

6   don't get to get the information behind these

7   studies to hear the dissenting voices, as we know

8   there are those.

9           In fact, in their motion to quash, they

10  even cite that -- that WPATH's concern that some of

11  this information could get out and it could be

12  misinterpreted.  That's what America is about.

13          We've put all the information out on

14  the table.  If you want to claim that a scientific

15  theory or medical theory is true and accurate and

16  correct and the proper way and the standard of

17  treatment, then it must be placed out there to be

18  tested, to be reviewed, to be sought about.

19          And, in this instance, as much as WPATH

20  has said that the State of Missouri is in some way

21  phobic to people with these issues, nothing could be

22  further from the truth.

23          In fact, this statute becoming

24  unconstitutional will help these individuals.

13

1  Because what will help is that all of the

2  information, the medical science, the studies will

3  all come out, and then the people of this state who

4  are considering these sorts of treatments and

5  therapies --

6          THE COURT:  Of the State of Illinois?

7          ATTORNEY DREW:  Of the State of Illinois

8  and every other state will get an opportunity to

9  read and review these scientific studies and to test

10 them, and then others can do their own studies.

11          That's what this is about.

12          You don't get to say, and what's

13 happened here in the state of Illinois is very

14 simply, the Shield Law has said we agree with one

15 scientific theory, one medical course of treatment,

16 and you're not allowed to get any information about

17 it.

18          It's precisely what the State of

19 Illinois and what states are not allowed to do.  You

20 simply can't do that.  It violates the First

21 Amendment.  And it clearly does.  And there's a

22 number of cases I've cited that I think that's

23 precisely what it is.  Because they've picked and

24 looked at what is your reasoning --

14

1      THE COURT:  "They"?

2      ATTORNEY DREW:  "They" being the State of

3  Illinois in this statute.

4      THE COURT:  I'm sorry.

5      ATTORNEY DREW:  And the State of Illinois

6  in this instance has said, your theory or thought

7  process is you disagree with gender-affirming care

8  for children so, therefore, because that's your

9  thought process and you disagree with us, we're

10 going to prohibit your ability to get information.

11      It isn't in any general way of doing

12 it.  It's very specific.  Very -- very closely

13 tailored to deal with just two issues.  One,

14 reproductive rights.  And, one, issues involving

15 gender dysphoria and other gender-affirming care.

16 And when I say "one," I mean all of them in the

17 instance of this so.

18      And in doing that, I think that's the

19 reason why we need to even go past just the fact

20 that I don't think our requests fall under the

21 Shield Act, but I think that if the Court deems that

22 it is, because, technically, we are seeking that and

23 the statute is written so broadly that there's even

24 one word in it that says:  Or in any way seeking or

1    helping in care.

2              I don't know what that means.  I would

3    lay money that the legislature doesn't know what it

4    means when they wrote it.  They just made it as

5    broad as humanly possible.

6              So, conceivably, what we have here is,

7    if you believe it does fall into that, then I think

8    now all of these constitutional issues really play

9    into it and really come full bear because, in this

10   instance, the State's enacting a legislation where

11   they have adopted a policy of hostility towards

12   other states.  And it's precisely the type of things

13   that I don't think is allowed, not only in Illinois,

14   but not allowed in the United States, particularly

15   when it involves state versus state.

16             And so for all those reasons,

17   Your Honor, and all the reasons I've laid out in the

18   reply or response to their motion to quash that

19   their motion to quash should be denied but that in

20   addition to that the underlying statute would need

21   to be found unconstitutional for all those reasons.

22             THE COURT:  So it's going to be reviewed a

23   couple times, isn't it?

24             ATTORNEY DREW:  Well, it will go

16

1    straight -- if the Court agrees with me, it would

2    probably go straight to the Illinois Supreme Court,

3    and we can get to the crux of the issue very

4    quickly.

5              ATTORNEY DAILEY:  Your Honor, may I point

6    out --

7              THE COURT:  Yes, you may.

8              ATTORNEY DAILEY:  I just want to point out

9    two quick things.  Notably absent from what counsel

10   shared here is any discussion of this State's

11   Rule 17.

12              That rule -- it's argument that we're

13   making in our motion, and that is to say, Rule 17

14   says:  If you're issuing a foreign subpoena in

15   Illinois for lawful health care activity, one of two

16   exemptions must apply.

17              They concede in the subpoena that they

18   are seeking lawful health care activity.

19              They do not identify an exemption.

20   That reason alone is dispositive on this issue in

21   front of you.  They don't comply with Rule 17.

22              Counsel muddies the water and seems to

23   suggest that somehow what's in front of you is the

24   constitutionality of the Shield Law.

17

1          That's not what's in front of you.

2          It's the subpoena that's in front of

3    you.

4          Rule 17 alone is proof positive that

5    the subpoena should be quashed.

6          On the Shield Law, it's quite clear

7    that when the legislature and the governor enacted

8    this Shield Law they had Missouri AG in mind, this

9    kind of civil and criminal discovery, from outside,

10   out-of-the-state enforcers who are seeking

11   information having to do with gender-affirming care.

12         That law, which is new, and I think

13   this would be sort of a matter of first impression

14   if you ruled or if the Supreme Court rules --

15         THE COURT:  I think whichever way I rule.

16         ATTORNEY DAILEY:  Right.

17         And so -- so we think, and we've laid

18   out in our motion all of the reasons, the intent

19   behind the -- the intent behind the law, all the

20   reasons why the Shield Law bars precisely the kind

21   of subpoena in front of you.

22         Counsel attempts to also argue that

23   somehow you're bound by courts in other places.

24         They cite the Middle District of

18

1   Alabama and courts in North Carolina.

2              And counsel is correct that they've

3   been litigating and states have been litigating

4   these documents and these requests in others

5   jurisdictions.  But as you know, Your Honor, we have

6   different laws here, it's a different court.  None

7   of those states have a Shield Law.  Different

8   counsel.  So to suggest that somehow that a

9   smattering of these documents have been produced in

10  other jurisdictions and somehow that's binding on

11  you is just -- couldn't be further from the truth.

12             What's in front of you is a subpoena

13  for documents.

14             We have a shield law, we have Rule 17,

15  and we have all of the arguments that we're making

16  in the motion.

17             I think their failure to address many

18  of those arguments in detail, particularly, the

19  legal arguments, and then to provide legal support

20  for their own arguments in their response is

21  sufficient basis to grant the motion to quash.

22             THE COURT:  Okay.  Thank you.

23             Have I, in this case, denied a subpoena

24  from Illinois to Missouri's Attorney General or

19

1    governor?

2         ATTORNEY DREW:  The subpoena was issued by

3    the clerk.

4         THE COURT:  It was?

5         ATTORNEY DREW:  Yes, it was.

6         THE COURT:  Okay.  All right.  I remember

7    it now.

8         ATTORNEY DREW:  Yes, sir.

9         THE COURT:  Returned it to you twice,

10   I think.

11        ATTORNEY DREW:  Yes, you did, Your Honor.

12   You are exactly right.

13        THE COURT:  That's because, when it's filed

14   under this case number, I don't get any background

15   information.  Everything that is kind of

16   miscellaneous goes into that number.  So it's a

17   huge, huge file.

18        ATTORNEY DREW:  I saw that.

19        THE COURT:  So, sorry, I didn't know the

20   basis.  I guess you requested or your office did.

21        ATTORNEY DREW:  I did.

22        THE COURT:  Okay.  Sorry.

23            I returned it twice.  Trust me.

24        ATTORNEY DAILEY:  I see.

20

1    ATTORNEY DREW:  You did.

2    THE COURT:  I should have called you.

3    I intended to, and I didn't.  I'm sorry.

4    ATTORNEY DREW:  Oh, no, Judge.

5    THE COURT:  Especially the second time.

6    ATTORNEY DREW:  Not at all.

7    THE COURT:  Since we have the statute in

8    Illinois, constitutional or not, I think I have to

9    at least follow that one for now.

10   I'm inclined to deny their motion for a

11   lot of other reasons, but I'm going to grant their

12   motion.

13   ATTORNEY DREW:  Okay.

14   THE COURT:  Okay?  So sorry.

15   ATTORNEY DREW:  Okay.  Thank you,

16   Your Honor.

17   THE COURT:  You prepare the order.

18   ATTORNEY DAILEY:  Pardon me?

19   THE COURT:  You prepare the order.

20   ATTORNEY DAILEY:  Yes, sir.

21   ATTORNEY DREW:  Thank you, Your Honor.

22   THE COURT:  If you want to write it, you

23   can.  If you want to do it at your office, you can.

24   ATTORNEY DAILEY:  Will do.

21

1          THE COURT:  If you want to do it in your

2    office, pass it around to them first.

3          ATTORNEY DAILEY:  Yes.

4          THE COURT:  Okay.  Thank you.

5          ATTORNEY DAILEY:  Thank you, Your Honor.

6          THE COURT:  Take care.

7          ATTORNEY DREW:  Thank you.

8          THE COURT:  Good luck.

9              (Which were all the proceedings had in

10              said matter on said date.)

11                    - oOo -

12

13

14

15

16

17

18

19

20

21

22

23

24

22

1   STATE OF ILLINOIS  )
                       )   SS:
2   COUNTY OF K A N E  )

3                   CERTIFICATE

4          I, Jennifer Campbell, an Official Court

5   Reporter for the Circuit Court of Kane County, 16th

6   Judicial Circuit of Illinois, transcribed the

7   electronic recording of the proceeding in the

8   above-entitled cause to the best of my ability and

9   based on the quality of the recording, I hereby

10  certify the foregoing to be a true and accurate

11  transcript of said electronic recording.

12

13  _____
            *Jennifer Campbell*
14          Jennifer Campbell, CSR, RPR
            Official Court Reporter
15          16th Judicial Circuit of Illinois

16

17

18

19

20

21

22

23

24