# EXHIBIT C

# THIS SUBPOENA IS FOR RECORDS ONLY

## IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

**YOU ARE COMMANDED TO PRODUCE THE FOLLOWING:** (Listed below or on the attached list )

| **Emily Noe, et al.** | **Michael Parson, et al.** | Case No. 2024-MR-3 |
|---|---|---|
| Plaintiff(s) | Defendant(s) | *Theresa Barreiro*<br>Clerk of the Circuit Court<br>Kane County, Illinois<br>4/30/2024 11:09 AM<br><br>FILED/IMAGED<br>File Stamp |

SERVE:

Name: WPATH/USPATH

Address: **2575 Northwest Pkwy**

City, State & Zip: **Elgin, IL 60124-7870**

### SUBPOENA FOR DEPOSITION/RECORDS

This is a subpoena for the production of documents for the purpose of discovery in accordance with Illinois Supreme Court Rule 202 - 206.

☐ **YOU ARE HEREBY COMMANDED** to appear to give your deposition before _____
at _____ in _____ ,Illinois
at _____ m. on _____ .

☒
**documents requested on ATACHMENT A either electronically or by mailing to Bryan Drew of Drew Law Group, 806 Public Square, Benton, IL 62812 by May 9, 2024 or 14 days from the date of service of this Subpoena or whichever is later. ESI may be produced in the form in which it is originally maintained unless it requires a propriety software or program. If so, a copy of same should be included with the production.**

☐ **YOUR APPEARANCE AT THE DEPOSITION IS WAIVED** if you tender a complete copy of the record(s) listed above together with completed certification to _____
_____ by _____ .

**YOUR FAILURE TO RESPOND TO THIS SUBPOENA MAY SUBJECT YOU TO PUNISHMENT FOR CONTEMPT OF THIS COURT.**

Name: **Bryan A. Drew**

Attorney for: **Defendants**

Atty Registration No.: _____

Address: **806 Public Square**

City: **Benton, IL 62812**

Phone: **6184399406**

Attorney E-mail: **service@drewlawgroup.com**

| NOTICE TO WITNESS |
|---|
| Do not call the Clerk of the Circuit Court for information relating to the subpoena |

4/30/2024 11:09 AM

Witness _____ (date)

*Theresa E. Barreiro* Clerk of the Circuit Court
(SEAL)

SUP-006 (11/12)

I served this subpoena by ☐ delivering a copy ☐ certified mail ☐ registered mail to _____

_____ on _____

and I paid the witness _____ for witness and mileage fees.


Subscribed and Sworn to before me

_____          _____
                                                                    Signature of person making service

_____
             Notary Public/Clerk of Court




**AFTER SERVICE, THE ORIGINAL (WHITE) MUST BE FILED WITH THE CIRCUIT COURT CLERK, ALONG WITH THE ENDORSEMENT OF SERVICE.**



**IN THE** ___19th___ **JUDICIAL CIRCUIT COURT,** _____Cole County_____ **, MISSOURI**

| Judge or Division: | **Case Number:** 23AC-CC04530 | |
|---|---|---|
| Plaintiff/Petitioner:<br>EMILY NOE, et al. | Person Subpoenaed:<br>WPATH/USPATH | Plaintiff's/Petitioner's Attorney:<br>James Bennett Clark |
| | Address:<br>2575 Northwest Pkwy<br>Elgin, IL 60124-7870 | Address:<br>1 Metropolitan Square<br>STE 3600<br>St. Louis, MO 63102<br>Telephone: |
| **vs.** | Requesting Party:<br>☐ Plt./Pet. Atty   ☐ Plt./Pet.<br>☒ Def/Resp. Atty   ☒ Def./Resp. | Defendant's/Respondent's Attorney:<br>Peter Francis Donohue |
| Defendant/Respondent:<br>MICHAEL L. PARSON,<br>et al. | Address: (Of Party Checked Above)<br>207 West High Street<br>Jefferson City, MO 65102<br>Telephone: | Address:<br>815 Olive Street<br>Suite 200<br>St. Louis, MO 63101<br>Telephone: |

For depositions attach a list of all attorneys of record and self-represented parties. Include the name, address and telephone number.

(Date File Stamp)

## Subpoena
## Order to Appear/Produce Documents/Give Depositions

The State of Missouri to: WPATH/USPATH _____ (person subpoenaed)

You are commanded:

☐ to contact _____ (name) at _____ (telephone)
   who will advise of time and place appearance is required.

☐ to appear at

  _____

  on _____ (date), at _____ (time).

☐ to testify on behalf of: _____.

☐ to give depositions.

☒ to produce documents requested on ATTACHMENT A either electronically or by mailing to: Bryan Drew of Drew Law Group, 806 Public Square, Benton, IL 62812, by May 9, 2024 or 14 days from the date of service, whichever is later. ESI may be produced in the form in which it is originally maintained unless it requires a propriety software or program. If so, a copy of same should be included with the production.

(Attach additional sheet if necessary)

___*Friday, December 15, 2023*___
Date issued

___Maub A. Eichholy___ter
Clerk

## Return/Affidavit

I certify that I served this subpoena in _____ (County/City of St. Louis), Missouri, by:

☐ delivering a copy to the person subpoenaed _____ (date).

☐ reading a copy to the person subpoenaed on _____ (date).

☐ I tendered legal fees for travel expenses per section 491.130, RSMo, in the amount of $ _____.

☐ Other: _____.

**Sheriff's Fees (if applicable)**
Summons    $ _____
Non Est    $ _____
Sheriff's Deputy Salary Supplemental
Surcharge (Civil Cases Only-$10.00)    $ _____
Mileage    $ _____ ( _____ miles @ $._____ per mile)
**Total**    $ _____

_____
Person Serving Subpoena

## Instructions

1. This subpoena will remain in effect until this trial is concluded or you are discharged by the Court. You must attend trial from time to time as directed. **No additional Subpoena is required for your future appearance at any trial of this case**. If you fail to appear, you may be held in contempt of court.

2. If you have any questions regarding this subpoena, contact the person who requested it listed on the front.

3. **Bring this form with you to court**. This form must be completed, signed, and returned to the clerk as soon as you have testified or been dismissed.

## Witness Claim

I have served _____ day(s) as a witness and I traveled _____ mile(s) round-trip from my home to the courthouse to attend this proceeding.

_____
Signature

_____
Current Address

_____
City, State, Zip

Subscribed and sworn to before me on _____ (date).

Total Claimed $ _____

_____
Clerk

# IN THE CIRCUIT COURT OF COLE COUNTY
# STATE OF MISSOURI

EMILY NOE, *et. al*,          )
                              )
*Plaintiffs*,               )
                              )
v.                        )     Case No. 23AC-CC04530
                              )
MICHAEL L. PARSON, in his official  )
capacity as Governor for the State    )
of Missouri, *et. al*           )
                              )
*Defendants*.             )

## ATTACHMENT A

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION TO NON-PARTY THE WPATH/USPATH

Defendants, by and through counsel, pursuant to Rule 58.02 of the Missouri Rules of Civil Procedure, request that the WPATH/USPATH, produce the documents requested below with a business record affidavit of the custodian of records to the Office of the Missouri Attorney General, 207 West High Street, P.O. Box 899, Jefferson City, Missouri 65102, or electronically as agreed to by counsel by May 9, 2024 or within 14 days, whichever is later.

## <u>DEFINITIONS</u>

A. "Action" means the above-captioned case proceeding in the Circuit
Court of Cole County State of Missouri, *Noe, et al. v. Parson, et al.*,
Case No. 23AC-CC04530.

B. "And," "or" and "and/or" and any other conjunctions or disjunctions
used herein shall be read both conjunctively and disjunctively so as to
require the production of all Documents (as hereinafter defined)
responsive to all or any part of each particular request.

C. "Any," "each," "every," and "all" shall be read to be inclusive and to
require the production of each and every document or communication
(hereinafter defined) responsive to the particular request.

D. "The Act," or "S.B. 49" means the enacted § 191.1720 of the Missouri
Revised Statutes, also referred to as the "Missouri Save Adolescents
from Experimentation (SAFE) Act."

E. The terms "you" and "your" mean the World Professional Association
for Transgender Health and the United States Professional Association
for Transgender Health (WPATH/USPATH) as well as any officers,
agents, employees, staff, administrators, representatives, contractors,
consultants, investigators, and all other persons and entities working
or purporting to act on behalf or acting on behalf of the same.

F. The term "comprehensive psychological or psychiatric assessment" means a comprehensive clinical psychological and or psychosocial assessment by a qualified mental health professional with experience and or understanding of family systems and child development, that includes at least an evaluation of the patient's "early awareness of gender and family context . . . parental/family attunement to [the patient's] affirmed gender . . . current gender expression . . . school context . . . sexual / relationship development . . . current intimate relationship(s) . . . physical and mental health . . . support . . . [and] future plans / expectations"[1] as well as the "comprehensive assessments" referred to by WPATH, Standard of Care 8, at various points, including page 53.[2]

G. The term "puberty-blocking drugs" means gonadotropin-releasing hormone analogues or other synthetic drugs used to stop luteinizing hormone secretion and follicle stimulating hormone secretion, synthetic antiandrogen drugs to block the androgen receptor, or any other drug used to delay or suppress pubertal development in children or

---

[1] Coolhart, Deborah & Baker, Amanda & Farmer, Sara & Malaney, Meaghan & Shipman, Dara. (2013). Therapy with Transsexual Youth and Their Families: A Clinical Tool for Assessing Youth's Readiness for Gender Transition. Journal of Marital and Family Therapy. 39. 10.1111/j.1752-0606.2011.00283.x.

[2] "There are no studies of the long-term outcomes of gender-related medical treatments for youth who have not undergone a comprehensive assessment. Treatment in this context (e.g., with limited or no assessment) has no empirical support and therefore carries the risk that the decision to start gender-affirming medical interventions may not be in the long-term best interest of the young person at that time." WPATH SOC 8 (2022), page 53, available at https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644.

adolescents for the purpose of assisting an individual with a gender transition. For the purpose of these requests, this term shall be construed identically to the term as defined in Mo. Rev. Stat. § 191.1720.2(7).

H. "Natal sex" or "natal male" or "natal female" means the physical sex a person is born with, as initially designated at birth on his or her birth certificate.

I. The term "cross-sex hormones" means testosterone, estrogen, or other androgens given to an individual in amounts that are greater or more potent than would normally occur naturally in a healthy individual of the same age and natal sex, such as testosterone given to a natal female and estrogen given to a natal male. For the purpose of these requests, this term shall be construed identically to the term as defined in Mo. Rev. Stat. § 191.1720.2(2).

J. "Gender affirmation" means any medical or mental health care, counseling or associated treatment of gender dysphoria or any related condition including affirmation of the gender with which a person identifies, instead of his or her natal sex. It also means any care or associated treatment of "gender-affirming care" defined by Plaintiffs first Requests for Production to mean "any health care, physical, mental, or otherwise, administered or prescribed for the treatment of

Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition."

K. The term "gender dysphoria or any related condition" as used here broadly refers to gender dysphoria or gender incongruence, whether diagnosed or potentially present, as well as identification as transgender, questioning, or any other related state of mind or condition of a potential, current or former patient. For purposes of these requests, "gender dysphoria" shall include the following: (a) the diagnoses for "Gender Dysphoria in adolescents and adults" and "Gender Dysphoria in children," as defined within Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) and the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR); (b) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder in Adolescents and Adults," "Gender Identity Disorder in Children," and "Gender Identity Disorder Not Otherwise Specified," as defined within the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) and the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR); (c) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder in Children,"

"Transsexualism," and "Gender Identity Disorder of Adolescence or Adulthood, Nontranssexual Type," and Gender Identity Disorder not Otherwise Specified," as defined within the Diagnostic and Statistical Manual of Mental Disorders, Third Edition, Revision (DSM-III-TR); (d) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder in Children," "Transsexualism," and "Atypical Gender Identity Disorder," as defined within the Diagnostic and Statistical Manual of Mental Disorders, Third Edition (DSM-III); and (e) the diagnoses for "gender incongruence of adolescence and adulthood" and "gender incongruence of childhood," as defined within the International Classification of Diseases, Eleventh Revision (ICD-11); and the diagnoses for "transsexualism" and "gender identity disorder," including any subcategories, as defined within the International Classification of Diseases, Tenth Revision (ICD-10) and International Classification of Diseases, Ninth Revision (ICD-9).

L. The term "gender transition surgery" means any or all of the following definitions: (1) surgical procedures that change biological organs and tissues commonly associated with a particular natal sex, including, but not limited to, castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, or penectomy; (2) surgical procedures that artificially

construct tissue with the appearance of genitalia that differs from the individual's biological sex, including, but not limited to, metoidioplasty, phalloplasty, or vaginoplasty; or (3) augmentation mammoplasty or subcutaneous mastectomy. For the purpose of these requests, this term shall be construed to mean any of the definitions included in Mo. Rev. Stat. § 191.1720.2(4)(a)–(c).

M. The term "gender transition intervention" means any procedure performed by a doctor, nurse, or other healthcare professional that involves or includes the patient receiving puberty-blocking drugs, cross-sex hormones, or gender transition surgery, including any "Gender-Affirming Care" as defined by Plaintiffs in interrogatories dated December 28, 2023 to mean "any health care, physical, mental, or otherwise, administered or prescribed for the treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition."

N. "Patient(s)" means any individual currently or who, at any point during the period of these requests, is or has been under the age of 18, and to whom any employee, agent, or contractor of yours has provided any medical procedure or gender transition intervention, or currently provides or plans to provide any medical procedure or gender transition intervention during the period of this request.

O. "Parent(s)" means either parent or legal guardian with authority over a minor child such as the authority to authorize medical procedures or gender transition interventions.

P. "Communication" and "Communications" means any written, oral (if recorded in a format that can be provided, e.g., contemporaneous notes), or electronic exchange or transmission of information by any means, including face-to-face conversation, in-person meeting, mail, telephone, electronic mail, facsimile, instant message, social media, and the Internet.

Q. "Device" refers to any computer, telephone, tablet, or other electronic equipment used to communicate or store information.

R. "Document" and "Documents" mean the complete original or true, correct, and complete copies and any non-identical copies of any written, recorded, or graphic material no matter how produced, recorded, stored, or reproduced, including but not limited to any writing, letter, envelope, telegram, electronic mail, attachment to electronic mail, facsimile, message, instant message, voicemail, meeting minute, memorandum, statement, book, publication, record, survey, map, study, report, handwritten note, drawing, working paper, chart, tabulation, graph, tape, data sheet, data processing card, printout, microfilm, microfiche, photograph, index, scientific notebook,

appointment book, appointment invitations and responses, diary, diary entry, calendar, desk pad, telephone message slip, notice, alert, bulletin, and any data compilation whether or not in your possession, custody, or control, and whether or not claimed to be privileged. The term "Document" includes, without limitation, Communications. A draft, version, or non-identical copy is a separate Document within the meaning of this term. All attachments or enclosures to a document are deemed to be part of such document.

S. "Identify" means when referring to:

    a. a person, to state the person's full name and present or last known business address and business telephone number, present or last known employer and job title, e-mail address, and, if no business address or telephone number is available, present or last known home address and home telephone number;

    b. a document, to state its date, its author(s) and addressees(s), and its nature and substance with sufficient particularity to enable it to be identified including to state the type of document (e.g., letter, memorandum, email, chart), its author and originator, its date or dates, all addressees and recipients, its present location or custodian, the topics dealt with therein with a degree of particularity sufficient for a demand for production, and any

identifying marks, numerals, code words or letters distinguishing it from other like documents. If any such document was, but no longer is, in any Defendant's possession or subject to any Defendant's custody or control, state what disposition was made of it—for example, destruction or transfer to a different named individual or entity. Documents to be identified shall include all documents in any Defendant's possession, custody, or control and all of the documents of which any Defendant has knowledge. Defendants may supply a document in lieu of identifying it, so long as the Defendant clearly labels the document to indicate the request to which the document responds;

c.  a Communication, if other than a document, to state the mode of communication (*e.g.*, face-to-face, telephonic, email) including the account name or number, the date and place thereof, to identify the person(s) who were present at or participated in, or who have knowledge or information relating to each event or occurrence, and to state the general subject matter thereof.  When used in reference to an oral communication, it means to describe the communication by stating the date and place where it was made; to identify the maker and each recipient in addition to all the other persons present; to summarize the substance of the

communication, and to indicate the method of communication (in person, telephonic, etc). Please note that when identifying the date of an oral communication, the precise date, if known, must be given. If only an approximate date is given, it will be presumed that you have no recollection or specific knowledge as to the exact date.

T. "Request" means any request served pursuant to Missouri Supreme Court Rule 58.02, including every one of the enumerated requests in this document.

U. "Including" means "including but not limited to."

V. "Information" means data, documents, communications, writings, drawings, graphs, charts, photographs, sound recordings, images, records generated by individuals or machines, or the compilation of any of the foregoing stored in any medium, including electronically stored information.

W. "Meeting" means gatherings conducted in person, by telephone, or virtually (e.g., webex, zoom, FaceTime).

X. "Medicaid recipient" or "Medicaid recipients" shall have the same definition as stated in Missouri Revised Statute 208.164. "Medicaid recipient" shall also mean "an individual who has been determined

eligible and is currently receiving Medicaid." See 42 CFR § 435.4 (defining Medicaid "beneficiary").

Y.  The word "organization" means any corporation, government entity, subdivision or agency, business trust, estate, trust partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity.

Z.  The term "person" or "persons" means any natural person, firm, partnership, association, joint venture, trust, corporation, governmental entity or agency or subdivision thereof, not-for-profit enterprise, or other organization or legal or business entity, and all present and former officers, directors, agents, administrators, managers, or other persons acting or purporting to act on behalf of such persons without any limitation, or any party (including agents or employees) to this litigation.

AA.  "Relates to" or "relating to" means involving, discussing, identifying, referring to, concerning or in any way touching upon the matter sought.

## **INSTRUCTIONS**

I. Accompanying all records provided in response to this request, your records custodian should fill out the attached business records affidavit, filling in the blanks with applicable information and signing as affiant before a notary public.

II. Defined terms are generally not capitalized unless grammatically required.

III. Unless otherwise specified, the time-period for all requests is three (3) years from the date of service of this document through the present.

IV. In responding to these Requests, you are required to furnish all information that is known or available to you or subject to your reasonable inquiry, including information known or in the possession, custody, or control of your advisors, investigators, employees, representatives, agents, independent contractors, consultants, accountants, attorneys, affiliates, any other person directly or indirectly employed by, or connected with, you or your attorneys, or any other person or public or private entity otherwise subject to your control.

V. You may, in lieu of identifying any document or written communication, attach a true and correct copy of such document or communication as an exhibit to the answers to these requests, including a specific reference to the request to which each such attached document or written communication relates.

VI. If you are unable to respond fully to any request after exercising good-faith diligence to secure the information to do so, supply the information that is available to you and explain why your response is incomplete, the efforts you made to obtain responsive information, and the sources from which all responsive information may be obtained, to the best of your knowledge or belief.

VII. Each copy or duplicate of a document bearing initials, stamps, comments or notations of any character which are not part of the original text shall be considered a separate document. Additionally, all drafts (whether typed, handwritten or otherwise) made or prepared in connection with any document shall be considered a separate document. For purposes of the foregoing, "drafts" means any earlier, preliminary or tentative version of all or part of a document, whether or not such draft was superseded by a later draft or version, and whether or not the terms of the draft are the same or different from the terms of the final document.

VIII.    With respect to any responsive document or communication as to which you wish to assert a claim of privilege, identify each such document or communication by indicating its date, the author(s) and addressees(s), all recipients thereof, the general subject matter thereof, the privilege claimed and the basis for your claim of privilege.

IX.    These Requests must be answered completely and specifically by you in writing and must be verified.

X.    Responses to these Requests shall include all information and Documents within the custody, possession, or control of you, your employees, partners, contractors, accountants, attorneys, or other agents, or which are otherwise available to you.

XI.    Copies of requested Documents should be produced along with the response to any Request herein.

XII.    Documents relevant and responsive to the Requests shall be gathered from all professional as well as personal files, computers and electronic devices, including personal and professional email, instant messaging, text messages, and cloud-based storage accounts.

XIII.    Each Document shall be specifically labeled and identified with the specific request to which it is responsive. Documents should generally be produced as they are maintained and organized in the course of business, including producing them with images of their

original file folders and file jackets or covers, and indicating the division, department, and/or individual from whose files the document is being produced.

XIV.     Whenever possible, Documents created or stored in electronic format should be produced in the original, native electronic format. Otherwise, the documents should be produced in a Portable Document Format (PDF). Only if the responsive Document is in neither format should it be produced in paper format.

XV.      If any document or thing requested was at one time in existence, but has since been lost, discarded, transferred to a third party, or destroyed, identify each such document in writing as follows: (a) addressor, addressee, person who prepared or authorized the document; (b) date of preparation or transmittal; (c) subject matter; (d) number of pages, attachments, or appendices; (e) all persons to whom distributed; (f) date of loss or destruction; (g) the circumstances under which the document or thing was lost, discarded, transferred to a third party, or destroyed; and (h) each person with knowledge of its subject matter and of the circumstances under which it was lost, discarded, transferred to a third party, or destroyed.

XVI.     If a Request cannot be complied with in full, it shall be complied with to the extent possible, and accompanied by an explanation of your

objection to the request or other reasons you are unable to fully comply. When, after a reasonable and thorough investigation using due diligence, you are unable to produce a Document or any part thereof, specify in full: the information that you claim is not available; the reason the information is not available to you; and the steps you have taken to locate such information.

XVII.    If in doubt as to the meaning of any request for production, read all requests as intending to seek the maximum amount of material responsive to that request.

XVIII.    If Plaintiffs object to any part of a request, Plaintiffs shall specify each part of the Request to which they object; set forth with specificity the grounds for objecting to each such part of the request, including the reasons; state whether any responsive materials are being withheld on the basis of that objection pursuant to Missouri Supreme Court Rule 58; and otherwise respond to all parts of the Request to which Plaintiffs do not object.

XIX.    For purposes of interpreting or construing the scope of these Requests, all non-defined terms shall be given their most expansive and inclusive definition. This includes, without limitation, the following:

a. Construing "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the request more inclusive;

b. Construing the singular form of the word to include the plural, and the plural form to include the singular;

c. Construing the masculine to include the feminine, and vice versa;

d. Construing the term "including" to mean "including but not limited to" and construing the term "all" to mean "any and all," and vice versa;

e. Construing the term "each" to include "every," and construing "every" to include "each";

f. Construing the use of a verb in any tense as applying to the use of the verb in all other tenses as is necessary to make any paragraph more, rather than less, inclusive;

g. Construing and interpreting all spelling, syntax, grammar, abbreviations, idioms, and proper nouns to give proper meaning and consistency to their context.

XX.    For efficiency and in the effort to use plain language in these requests, the terms "any" or "all" or "any and all" have been omitted throughout these requests. Those terms shall be understood to be interspersed throughout such that, if a type of item is requested, any and all of that item is requested, with the understanding that the

maximum scope of material responsive to each request during the time period is being sought.

## REQUESTS FOR PRODUCTION

1.     Produce all Communications and Documents relating to the application and selection process for the WPATH Guideline Steering Committee, the Co-Chairs of Standards of the SOC-8, and each member of the WPATH Standards of Care 8th Version Evidence Review Team,  See generally SOC-8 at development process).

2.     Produce all Communications and Documents relating to the decision regarding what chapters to include and not include in SOC-8, including but not limited to the decision not to include a chapter on detransitioning. Produce all Communications and Documents relating to the development and approval of chapters 9 (Adolescents), 7 (Children), 8 (Non-binary), 9 (Eunuchs), 12 (Hormone Therapy), 13 (Surgery and Postoperative Care), 14 (Voice and Communications), 15 (Primary Care), 16 (Reproductive Health), 17 (Sexual Health), and 18 (Mental Health) of SOC.

3.     Produce all Communications and Documents relating to the Delphi process for the SOC-8 chapters listed in Request #3, including who participated and voted in the Delphi process.  See, e.g., SOC-8, at S247-250.

4.     Produce all Communications and Documents relating to the systematic review, "evidence tables [.] and other results of the systematic

reviews" that the Evidence Review Team presented related to the chapters listed in Request #3. See SOC-8 at 049 ("The Evidence Review Team presented evidence tables and other results of the systematic reviews to the members of the relevant chapter for feedback.")

5.   Produce all Communications and Documents relating to the Evidence Review Team's search criteria, study selection results, and data extraction listed in Request#3. See SOC-8 at §3249).

6.   Produce all Communication and Documents relating to the evidence grades assigned by the Evidence Review Team for all studies, research questions, and statements for the chapters listed in Request #3. See SOC-8 at §250. (The Evidence Review team assigned evidence grades using the GRADE methodology.")

7.   Produce all Communications and Documents relating to the value factors that were included in the GRADE review process, including "the balance of potential benefits and harms" and "values and preferences of providers and patients." SOC-8 at §250.

8.   Produce all Communications and Documents comprising comments and

survey responses to the draft SOC-8 at §251 ("A final SOC-8 draft was made available for comments.... A total of 1,279 people made comments on the draft with a total of 2,688 comments.")

9.      Produce all Communications and Documents relating to revisions of SOC-8 as a result of, or in response to, comments received on the draft SOC-8.  See SOC-8 at §251 ("The Chapters Leads and Guiding 4 Steering Committee considered the feedback and made any necessary revisions…")

10.     Produce all Communications and Documents relating to the minimum age for treatments in SOC-8, including minimum ages for treatments and the later decision not to include minimum ages for treatments. *See, e.g. "New Standards of Transgender Health Care Raises Eyebrows," The Economist (Sept 23, 2022),* [https://www.economist.com/united-states/2022/09/22/new-standards-of-transgender-health-care-raise-eyebrows](https://www.economist.com/united-states/2022/09/22/new-standards-of-transgender-health-care-raise-eyebrows) ("Known as SOC8, they originally included a list of minimum ages for treatments—14 for cross-sex hormones, 15 for removal of breasts, 17 for testicles.  Hours later, a 'correction' eliminated the age limits.")

11.     Produce all Communications and Documents relating to the role played by, and the identities of, non-professional "stakeholders" in the development and approval of SOC-8 and , in particular, the chapters listed in Request #3.  See, e.g., SOC-8 at §248 ("Each chapter also included stakeholders as members who bring perspectives of transgender health advocacy or work in the community….").

12.      Produce all Communications and Documents identifying funding sources for SOC-7 and SOC-8.

13.     Produce all Communications and Documents relating to the development review, an approval of the "Assessment and Treatment of Children and Adolescents with Gender Dysphoria" chapter in SOC-7.

14.     Produce all Communications and Documents regarding Dr. Lisa Littman, her article, Rapid-Onset Gender Dysphoria in Adolescents on Young Adults: A Study of Parental Reports, and any subsequent revisions to that article.

15.     Produce all Communications and Documents relating to the September 2018 WPATH public statement entitled, "WPATH POSITION ON 'Rapid-Onset Gender Dysphoria (ROGD)."

16.     Produce all Communications with the journal PLOS One, its officers, agents, employees, or other representatives dated after July 1, 2017.

17.     Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," available at https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

18.     Produce all Communications and Documents relating to the October 2021 "Joint Letter from USPATH and WPATH," available at :https://www.wpath.org/media/cms/Documents/Public%20Policies/2021/Joint%20WPATH%20USPATH%20Letter%20Dated%%20Oct%2012%20201.pdf

19.     Produce all Communications and Documents regarding the resignation of Dr. Erica Anderson for USPATH.

20.     Produce all Communications and Documents related to the article by Dr. Laura Edwards Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment is Failing Trans Kids," and published in The Washington Post, available at https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychlogist/.

21.     Produce all Communications and Documents related to the drafting of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), and any subsequent editions or revisions.

22.     Produce all Communications and Documents related to the drafting of the ICD coding for gender identity-related health.

23.     Produce all Communications and Documents relating to Dr. Kenneth Zucker's participation in the February 2017 USPATH conference, including Communications and Documents relating to any review and acceptance of any papers or presentations by Dr. Zucker and any decision to cancel any part of his planned participation.

24.     Produce all Communications and Documents related to the review, scoring and acceptance of all presentations for the February 2017 USPATH conference.

25.    Produce all Communications and Documents relating to the review, scoring and acceptance of all presentation submissions for the WPATH 27th Scientific Symposium held in September 2022.

26.    Produce all Communications and Documents relating to the review and scoring, and acceptance of all presentation submissions for the USPATH 2021 Scientific Symposium.

27.    Produce all video recordings of the sessions (including any "town-hall" or informal sessions) of any USPATH or WPATH conference since January 1, 2017.

28.    Produce all Communications and Documents distributed to attendees or participants of any USPATH or WPATH conference since January 1, 2017.

29.    Produce all Communications between You and other medical organizations, associations, or societies regarding Gender Dysphoria, Related Conditions and Transitioning for minors.

30.    Produce all Communications regarding the drafting of Jason Rafferty Et al. Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents, Pediatrics (Oct. 2018).

31.    Produce all Communications regarding the drafting of Wylie C. Hembree, Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent

Persons: An Endocrine Society Clinical Practice Guideline, J. Clin. Endocrinol. Metab (Nov. 2017).

32.    Produce all Communications and Documents relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender-Dysphoria or Related Conditions.

33.    Produce all Communications and Documents relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

34.    Produce all Communications and Documents relating to the possibility of individuals detransitioning after receiving either puberty blockers or cross-sex hormones.

35.    Produce all Communications and Documents relating to the risks of Transitioning.

36.    Produce all Communications and Documents relating to the effects on Minor of medications used to effect Transitioning.

37.    Produce all Communications and Documents relating to the appropriate age for Beginning Transitioning treatments in Minors.

38.    Produce all Communications and Documents relating to the informed consent process for Minors considering or undergoing Transitioning treatments.

39.     Produce all Communications with the Plaintiff's in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

40.     Produce all Communications and Documents dated after February 1, 2019, in regard to consideration or evaluation of the following as part of the drafting or evidence review process of SOC-s: *Nat'l. Inst. For Health and Care Excellence, Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria (2021); Nat'l Inst. For Health and Care Excellence, Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria (2021)*; Abigail Shrier, *Irreversible Damage (2020)*; William J Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination, 106 J. Clinical Endocrinology & Metabolism e3287(2021)*; Diane Chen of et al., *Consensus Parameter Research Methodologies to Evaluate Neurodevelopmental Effect of Pubertal Suppression in Transgender Youth, Transgender Health, Vol5, No. 4, 2020, DOI: 10.189/trgh.2020.0006*; *The Cass Review, Independent Review of Gender Identity Services for Children and Young People: Interim Report (Feb. 222),* [https://cass.indepent-review.uk/publiocations/interm-report/](https://cass.indepent-review.uk/publiocations/interm-report/); Stephen Levine, et al. *Reconsidering Informed Consent for Trans-Identified Children, Adolescents and Young Adults.* J. Sex & Marital Therapy 7 (Mar. 2022); Socialstyrelsen, Care of

children and adolescents with gender dysphoria (Feb. 2022); *Academie Nationale de Medecine, Medicine and gender trans identity in children and adolescents (Feb. 2022);* Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation, Pediatrics (2020)*; Jack L. Turban et al., *Access to Gender –Affirming Hormones During Adolescence and Mental Health Outcomes in Transgender and Non-binary Youths Receiving Gender-Affirming Care, JAMA Network Open (February 25, 2022);*

41.　Produce all Documents identifying types of participation in WPATH and USPATH meeting and/or committees by members and nonmembers.

42.　Produce all Communications and Documents regarding the Society for Evidence Based

43.　Gender Medicine(:SEGM"), the American College of Pediatrics, 4th Wave Now, Transgender Trend, Michael Laidlaw, MD. William Malone, MD, Paul Hruz, MD, Quentin Van Meter, MD, Julie Mason, MD, Andre Van Mol, MD, Michelle Cretella,, MD, Deborah Soh, Abigail Schrier, Jesse Singal and Hillary Case.

44.　Produce all communications and documents regarding gender transition interventions and treatments in Missouri.

45.　Produce all communications and documents regarding advertisements for Transitioning treatments.

46.     Produce all communications and Documents regarding funding for patients seeking Transitioning treatments, funding for research concerning Transitioning treatments.

47.     Produce all communications and Documents regarding the release of "The WPATH Files" dated March 4, 2024.[3]


Dated: April 25, 2024                    Respectfully submitted,

                                         **ANDREW BAILEY**
                                         ATTORNEY GENERAL

                                         */s/ Peter F. Donohue Sr.*
                                         Peter F. Donohue Sr., #75835
                                             *Assistant Attorney General*
                                         P.O. Box 899
                                         Jefferson City, MO 65102 Phone:
                                         573-751-8345
                                         Peter.Donohue@ago.mo.gov

---

[3] Available at https://environmentalprogress.org/big-news/wpath-files.

Page left intentionally blank.

## CERTIFICATE OF SERVICE

I hereby certify that on or shortly after April 25, 2024, the foregoing

was domesticated for service on the above referenced individual or

entity; in accordance with applicable rules, notice will also be provided

to counsel for plaintiffs.

*/s/ Peter F. Donohue Sr.*
Peter F. Donohue Sr., #75835
   *Assistant Attorney General*
815 Olive Street. Suite 200
St. Louis, MO 63101
Phone: 573-751-8345
Peter.Donohue@ago.mo.gov

STATE OF _____ )
                             ) ss.
COUNTY OF _____ )

## <u>BUSINESS RECORDS AFFIDAVIT</u>

Before me, the undersigned authority, personally appeared _____, who, being by me duly sworn, deposed as follows:

My name is _____, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of _____. Attached hereto are _____ pages of records from _____. These _____ pages of records are kept by _____ in the regular course of business, and it was the regular course of business of _____ for an employee or representative of _____ with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion, or diagnosis. The records attached hereto are the original or exact duplicates of the original.

_____
Affiant

In witness whereof I have hereunto subscribed my name and affixed my official seal this _____ day of _____, 2024.

_____
Notary Public

My Commission expires:_____